```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   DAVID EKUKPE,

 4                    Plaintiff,

 5             v.                              16 CV 5412 (AT)

 6   CITY OF NEW YORK,
     PO JUAN SANTIAGO,
 7   PO OSVALDO HERNANDEZ,
     SGT JOHN FERRARA,

 8                                             Conference
                     Defendants.
 9
     ------------------------------x
10
                                              New York, N.Y.
11                                            June 14, 2018
                                              10:45 a.m.
12
     Before:
13
                 HON. ANALISA TORRES
14
                                              District Judge
15

16

17

18

19
                 APPEARANCES
20

21   JOHN E. KNUDSEN
          Attorney for Plaintiff
22

23   SIVIN & MILLER LLP
          Attorneys for Plaintiff
24   BY:  CLELIA DOUYON

25
```

APPEARANCES


ZACHARY W. CARTER
        Corporation Counsel for the City of New York
        Attorney for Defendants defendants City of New York and
        Hernandez
KYLE C. BRUNO
        Assistant Corporation Counsel


WORTH LONGWORTH & LONDON LLP
        Attorneys for Defendant Santiago
BY:   MITCHELL GARBER
        DOUGLAS DABARBERA


THE QUINN LAW FIRM PLLC
        Attorneys for Defendant Ferrara
BY:   ANDREW C. QUINN
        ANTHONY DIFIORE
        STEVEN J. BUSHNELL

1           (Case called)

2           THE COURT:  We are here for a final pretrial

3    conference.  Defendants the City of New York and Officer

4    Osvaldo Hernandez have settlement their claims with plaintiff.

5    Plaintiff's claims against Officer Juan Santiago and Officer

6    Ferrara remain for trial.  Santiago and Ferrara, whom I will

7    refer to as the "co-defendants," have also brought cross-claims

8    against the city.

9           I will now address the parties' motions in limine and

10   the city defendants motion to dismiss the co-defendants'

11   cross-claims.  I will begin with the city's motion to dismiss.

12          The city moves to dismiss co-defendants' cross-claims

13   for reimbursement for legal expenses accrued in defending this

14   action and for prospective indemnification in the event that

15   either co-defendant is found liable to plaintiff.

16          Co-defendants' cross-claims for reimbursement of legal

17   expenses must be dismissed because they both failed to file a

18   notice of claim.  These claims arise under section 50-k(2) of

19   the New York General Municipal Law.  In order to maintain an

20   action against the city under section 50-k, a party must file a

21   notice of claim within 90 days of the cause of action arising

22   or otherwise file for leave to file a late notice of claim

23   within one year and 90 days of the cause of action arising.

24   New York General Municipal Law sections 50-e and 50-k(6).

25          Co-defendants' representation claims arose in December

1  2016, when the city notified them that it would not represent

2  them in this action.   There is no dispute that both

3  co-defendants failed to file a notice of claim within the

4  required time period after this notification.   They argue

5  nonetheless that they unsubstantially complied with the notice

6  of claim requirement because their answer and cross-claims,

7  filed within 90 days of the city's decision not to represent

8  them, provided the forms of notice that must be contained in a

9  notice of claim.

10         This argument misconstrues the notice of claim

11  requirement, which is a condition precedent to the commencement

12  of a lawsuit.   New York General Municipal Law section 50-e(1).

13  The filing of cross-claims cannot, therefore, substitute for

14  the filing of a notice of claim.   Accordingly, the city's

15  motion to dismiss co-defendants' claims for reimbursement of

16  legal expenses is granted.

17         I will now address co-defendants' indemnification

18  claims.   The city moves to dismiss co-defendants'

19  indemnification cross-claims on the grounds that the Court

20  should decline to retain supplemental jurisdiction over them.

21  In the alternative, the city requests that the Court decide

22  these claims as a matter of law after the conclusion of trial.

23         First, the motion to dismiss is denied.   The city does

24  not contend that the Court lacks supplemental jurisdiction,

25  only that the Court should decline it exercise it in its

5

1   discretion.  The Court shall retain supplemental jurisdiction

2   over the indemnification cross-claims because they arise from

3   the same nucleus of operative facts as plaintiff's federal

4   claims, that is, co-defendants' conduct during the arrest and

5   prosecution of the plaintiff.

6       Second, in the event that either co-defendant is found

7   liable at trial, the Court shall decide indemnification claims

8   as a matter of law after the conclusion of trial.

9   Co-defendants agree to this approach, and a number of courts in

10  this circuit have adopted it in cases involving indemnification

11  claims under section 50-k of the General Municipal Law.

12      Thus, if either co-defendant is found liable at trial,

13  the city will be given a reasonable opportunity, after

14  reviewing the trial evidence, to make a decision as to

15  indemnification.  If the city declines to indemnify, the

16  parties will be directed to brief the issue.  Accordingly, the

17  city's request is granted.

18      Finally, the city requests to be excused from

19  participating in the trial.  The only claims that remain

20  against it are co-defendants' indemnification cross-claims,

21  which, as stated above, will not be adjudicated at trial.

22  Accordingly, the city's request to be excused from

23  participating in the trial is granted.

24      I will now address the parties' motions in limine

25  begin with plaintiff's.

1          Plaintiff brings two motions.  First, plaintiff seeks

2     to preclude co-defendants from introducing evidence of his

3     youthful offender adjudication for robbery and criminal

4     conviction for attempted robbery, requesting that the Court

5     limit co-defendants to mentioning only the fact of the YO

6     adjudication and conviction, that they were also felonies, and

7     the sentence imposed an the time spent in custody.  The motion

8     is granted.

9          Co-defendants seek to introduce evidence of the YO

10    adjudication and conviction for two purposes: impeachment and

11    proof of damages.  First, I conclude that neither is admissible

12    for impeachment purposes under federal rule of evidence 609(d).

13    The YO adjudication is categorically inadmissible to impeach

14    plaintiff's character for truthfulness.  Admissibility of the

15    conviction is governed by federal rule of evidence 609(a)(1)

16    and (a)(2).

17         Under rule 609(a)(2), a prior conviction is admissible

18    for impeachment purposes if establishing the elements of the

19    crime require proving a dishonest act or false statement.

20    Attempted robbery is not such a crime and is therefore not

21    admissible under rule 609(a)(2).

22         Rule 609(a)(1) permits the introduction of prior

23    felony convictions for impeachment purposes so long as the

24    prejudice or confusion caused by such introduction does not

25    substantially outweigh the probative value under rule 403.  A

1    district court has broad discretion in this analysis.

2         I conclude that the prejudicial effect of admitting

3    the conviction for impeachment purposes would substantially

4    outweigh its probative value.  As one court in this circuit

5    recently explained, robbery is a crime of violence that has

6    "little bearing on truthfulness."  Dougherty v. County of

7    Suffolk, 13 CV 6493, 2018 WL 1902336, at *5 (E.D.N.Y. April 20,

8    2018).

9         Conversely, there is a real danger that the jury could

10   misuse this evidence as prior bad act evidence suggesting a

11   propensity to flout the law from an incident such as the one at

12   issue in this case, an impermissible use of evidence under

13   federal rule of evidence 404.  Accordingly, plaintiff's motion

14   to exclude the YO adjudication and criminal conviction for

15   impeachment purposes is granted.

16        Both plaintiff and co-defendants acknowledge, however,

17   that the prior adjudication and conviction are admissible with

18   respect to damages.  Specifically, plaintiff contends that his

19   fear of the police and inability to interact with the police

20   are attributable to the incidents at issue in this litigation.

21   Co-defendants seek to prove that his fear is instead the result

22   of his interactions with law enforcement in connection with his

23   prior YO adjudication and conviction.  Plaintiff does not

24   dispute the admissibility of the evidence for this purpose.

25        However, evidence of the nature and circumstances of

1   the offenses has the potential to prejudice the jury as prior

2   bad act evidence.  Accordingly, plaintiff's motion to limit the

3   admissibility of the YO adjudication and criminal conviction to

4   the fact that they were felonies, the sentence imposed, and the

5   sometime spent in custody is granted.  In other words,

6   co-defendants may ask plaintiff the following specifics

7   questions:  Isn't it true that you have a YO adjudication for a

8   felony, and isn't it true that you were convicted of a felony?

9        Plaintiff's second motion in limine seeks to exclude

10   two of Sergeant Ferrara's witnesses who were not identified in

11   his rule 26 disclosures or his responses to plaintiff's rule 33

12   interrogatories requesting the identity of witnesses.  The

13   witnesses are Lieutenant Ty Tucker, the supervising officer on

14   the scene of the arrest, and Officer Anthony Garcia-Rivas,

15   another officer on the scene.  Plaintiff asserts that both

16   witnesses were disclosed to him on April 26, 2018, one day

17   before submission of the joint pretrial order.

18        Under federal rule of civil procedure 37(c)(1), a

19   party that fails to disclose a witness in accordance with rules

20   26(a) and 26(e) may not use that witness at trial unless the

21   failure to disclose was substantially justified or harmless.

22   If the failure to disclose was neither substantially justified

23   nor harmless, a court may still permit the witness to testify

24   in its discretion based on four factors:

25        (1) The parties' explanation for the failure to comply

with the disclosure requirement;

        (2) The importance of the testimony of the precluded witness;

        (3) The prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and

        (4) The possibility of a continuance.

        Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006).

        Ferrara has not established that his failure to disclose was substantially justified or harmless.  However, I conclude in my discretion that both witnesses may testify. Although Ferrara has failed to adequately explain the failure to disclose, the testimony of two additional officers who were on the scene will add significant value as eyewitness accounts of the incident.

        Moreover, any prejudice suffered by plaintiff is mitigated by the fact that their testimony will concern the incident at the heart of this case, about which plaintiff has been gathering evidence throughout discovery.  Finally, given that we are now on the eve of trial, a continuance is not sensible.  Accordingly, plaintiff's motion to exclude those witnesses is denied.

        I will now address Sergeant Ferrara's motions in limine.

        Sergeant Ferrara brings eight motions in limine.

First, he moves to bifurcate the damages and liability phases

of the trial because evidence of damages will prejudice the

jurors, causing them to sympathize with plaintiff and make them

unable to evaluate the evidence effectively.

Bifurcation may be ordered in the Court's discretion

under federal rule of civil procedure 42(b) to avoid prejudice.

Beyond his conclusory assertion of prejudice, Ferrara makes no

showing that the jury will be able to evaluate liability

objectively if evidence of plaintiff's damages is also

presented at trial.  Accordingly, his motion to bifurcate the

liability and damages phases of the trial is denied.

Second, Sergeant Ferrara moves to preclude plaintiff

from introducing records prepared by the NYPD, CCRB, IAB, and

DAO in connection with his personnel and disciplinary history,

including nine documents on plaintiff's exhibit list in the

pretrial order.  Ferrara claims that these documents are

irrelevant and prejudicial but does not offer specific

objections to each.

The first two records that Ferrara moves to preclude

are the CCRB file and district attorney file with respect to

the incidents at issue in this litigation.  These documents are

Plaintiff's Exhibits 15 and 16.  The files contain both factual

material and conclusions about whether co-defendants' conduct

during the incident was unlawful.

The factual material is admissible so long as it is

11

1    not excludable under another evidentiary rule, such as the

2    prohibition against hearsay.  However, the conclusions of the

3    NYPD, CCRB, IAB, and DAO about issues to be decided by the jury

4    in this case, such as whether Ferrara falsely arrested

5    plaintiff, have the potential to both confuse and prejudice the

6    jurors and are not admissible with respect to co-defendants'

7    liability.

8          Plaintiff, however, argues that the CCRB's conclusion

9    that Ferrara made a false arrest should be admissible on the

10   issue of punitive damages because the NYPD never ultimately

11   disciplined him for this conduct.  I agree.  One of the core

12   purposes of punitive damages is to deter future misconduct.

13   State Farm Mutual Automobile Insurance Company v. Campbell, 53,

14   U.S. 408, 413 (2003).

15         The fact that the CCRB substantiated allegations

16   against Ferrara in connection with the events at issue in this

17   case but he was never disciplined by the NYPD is highly

18   relevant to whether punitive damages are necessary to deter

19   future misconduct.

20         Therefore, if the jury is asked to address punitive

21   damages, plaintiff shall be entitled to introduce evidence that

22   CCRB concluded that Ferrara made a false arrest.  Accordingly,

23   I am ordering that the punitive damages phase of the trial,

24   both whether plaintiff is entitled to punitive damages and the

25   amount, shall be bifurcated from the liability and compensatory

1    damages phase of the trial.

2         The remaining seven references identified by Ferrara

3    are Plaintiff's Exhibits 18 through 24.  They pertain to

4    Ferrara's personnel and disciplinary history at the NYPD.   In

5    his opposition to Ferrara's motion, plaintiff focuses on the

6    admissibility of records pertaining to one particular incident

7    in which the CCRB substantiated claims that Ferrara stopped a

8    man named Mamadou Bah without legal cause, used offensive and

9    discourteous language, touched and pushed Mr. Bah, and

10   threatened to use force and arrest Mr. Bah without legal cause.

11   The CCRB and the IAB both concluded that Ferrara made false

12   statements to the CCRB and IAB during their investigation of

13   that incident.

14        I conclude that evidence of Ferrara's unlawful stop,

15   use of offensive language, and physical touching and threatened

16   use of force and arrest is not admissible because such conduct

17   does not implicate his truthfulness as a witness, but is

18   instead evidence of a prior bad act that would be used to show

19   propensity.  Such evidence is not admissible under federal rule

20   of evidence 404 absent a common scheme or specific pattern

21   connecting him to the incident at issue here.  Although the

22   conduct is broadly similar to that alleged here, it does not

23   reflect a unique scheme or specific pattern.

24        Conversely, I conclude that plaintiff may introduce

25   evidence that Ferrara made false statements during the IAB and

1  CCRB investigation for the purpose of impeaching his character

2  for truthfulness.  Under federal rule of evidence 608(b),

3  plaintiff may ask Ferrara about the false statements on cross-

4  examination but may not introduce extrinsic evidence of them,

5  including the fact that the CCRB and IAB concluded that he made

6  a false statement.

7        In other words, plaintiff shall be permitted to ask

8  Ferrara whether he made false statements to the CCRB and IAB.

9  If Ferrara denies making such statements, plaintiff must accept

10  the answers and may not introduce evidence of the IAB's and

11  CCRB's conclusions.

12        Ferrara does not address why the remaining records,

13  which include Ferrara's performance evaluations and other

14  allegations of misconduct are inadmissible.  I will not address

15  each performance evaluation and misconduct allegation

16  individually but will provide the parties with the following

17  framework to govern commission of these records.

18        First, evidence of unsubstantiated or unfounded CCRB

19  claims is not admissible because their potential to prejudice

20  the jury substantially outweighs their probative value.

21  Second, as noted above, conduct that does not go to Ferrara's

22  truthfulness as a witness but instead concerns prior bad acts

23  that would be used a propensity evidence are dismissible absent

24  a showing of common scheme or pattern.  Third, plaintiff may

25  ask Ferrara about conduct that goes to Ferrara's truthfulness

1   as a witness and was not found to be unsubstantiated or

2   unfounded by the CCRB, but may not introduce extrinsic evidence

3   of such conduct.

4          Ferrara's third motion in limine seeks to preclude

5   plaintiff from introduce evidence of other lawsuits or

6   disciplinary complaints against him or any other officers who

7   will testify as witnesses.  Ferrara fails to identify any

8   specific lawsuits or disciplinary records other than those

9   mentioned in his previous motion in limine.  Other than Officer

10  Santiago, whose records I'm about to address, plaintiff's

11  exhibits do not contain additional legal or disciplinary

12  records implicating Ferrara or other officers who will

13  testimonial as witnesses.

14         Absent reference to specific records, I cannot make a

15  determination on this motion beyond the framework I have

16  already laid out:  Unsubstantiated or unfounded CCRB claims are

17  inadmissible; misconduct allegations that do not go to an

18  officer's character or truthfulness are inadmissible absent a

19  common scheme; and plaintiff may ask about allegations of

20  misconduct that go to an officer 's character for truthfulness

21  on cross-examination.

22         Fourth, Ferrara moves to preclude plaintiff from

23  requesting a specific dollar amount of damages at trial.  The

24  motion is denied.  However, plaintiff shall only request a

25  specific dollar amount during closing arguments.

15

1          Fifth, Ferrara moves to preclude plaintiff from

2    introducing a witness who was not included in plaintiff's rule

3    26 disclosures, Jeffrey Ajarij, a friend of plaintiff who was

4    on the stoop with him when he was arrested.

5          Plaintiff has made no showing that his failure to

6    disclose Ajarij was substantially justified or harmless.

7    However, Ajarij appeared in discovery given to co-defendants.

8    He will testify about the events leading to the plaintiff's

9    arrest, which is at the center of this litigation.

10         Ajarij's testimony will therefore have significant

11   evidentiary value.  Any prejudice suffered by co-defendants is

12   mitigated by fact that they are familiar with the events about

13   which Ajarij will testify.  In addition, as noted earlier, a

14   continuance is not sensible at the time.  Accordingly,

15   Ferrara's motion to exclude Ajarij is denied.

16         Sixth, Ferrara moves to preclude nonparty witnesses

17   from testifying about their "characterizations, impressions,

18   and opinions."  This motion is meritless and is denied.  As

19   plaintiff points out, lay witnesses may testify about their

20   impressions or opinions as set forth in federal rule of

21   evidence 701.

22         Seventh, Ferrara moves to preclude plaintiff from

23   introducing evidence of his "post-shooting employment status."

24   As an initial matter, Ferrara does not identify the shooting he

25   is referring to or plaintiff's current employment status.

1   Ferrara has not therefore shown that the relevance of this

2   information would be substantially outweighed by undue

3   prejudice, particularly because one's employment status is a

4   basic introductory question regularly asked of witnesses.

5   Accordingly, this motion is denied.

6          Eighth, and finally, Ferrara moves to preclude

7   plaintiff from arguing that Ferrara should have "responded

8   differently" during the incident or "used less force."  This

9   motion is also denied.  Plaintiff's task at trial will be in no

10  small part to prove exactly what Ferrara seeks to preclude him

11  from arguing.  To the extent that Ferrara is concerned that

12  period of will argue an improper legal standard for excessive

13  force to the jury, I will instruct the jury on the proper legal

14  standard at the conclusion of trial.

15         I will now address Officer Santiago's motions in

16  limine.  Santiago brings four motions in limine.  The first

17  motion seeks to preclude plaintiff from introducing the CCRB

18  file with respect to the incident at issue in this case.  The

19  same framework I applied to the CCRB file on Ferrara's motion

20  shall apply here.

21         First, factual material in the file is admissible so

22  long as it is not excludable under another evidentiary rule.

23  Second, the CCRB's conclusions about issues to be decided by

24  the jury in this case, such as whether Santiago made a false

25  arrest or false statement, are inadmissible during the

f6erakuc

1    liability and compensatory damages phase of the trial but are

2    admissible during the punitive damages phase of the trial.

3          Plaintiff has raised one additional issue here,

4    however, that was not raised in connection with Ferrara's

5    motion.  Plaintiff seeks to admit evidence that the CCRB

6    determined that Santiago made a false statement on arrest

7    paperwork in this case to impeach his character for

8    truthfulness during the liability and compensatory damages

9    phase of the trial.

10          Admission of evidence that Santiago made a false

11    statement in connection with this case would be unduly

12    prejudicial for the reasons already stated.  However, it is a

13    prior act that is probative of untruthfulness.  To avoid the

14    prejudicial effect of this evidence, plaintiff may ask Santiago

15    during the liability and compensatory damages phase of the

16    trial if Santiago has ever made a false statement in arrest

17    paperwork.  But plaintiff may not suggest or infer that the

18    CCRB concluded that Santiago made a false statement in

19    connection with the events at issue in this litigation until

20    the punitive damages phase of the trial.

21          Officer Santiago's second motion seeks to preclude

22    plaintiff from introducing evidence of other allegations of

23    misconduct against him.  This motion appears to refer to

24    Plaintiff's Exhibits 25 and 26, which are Santiago's central

25    personnel index file and his CCRB history.  Santiago also

1   refers specifically to a pending CCRB claim on which the CCRB

2   has not yet made a determination.

3         As I held in connection with Sergeant Ferrara's motion

4   in limine concerning other misconduct allegations,

5   unsubstantiated CCRB claims are inadmissible because their

6   prejudicial effect substantially outweighs their probative

7   value.  The same is true about the pending claim because the

8   CCRB has yet to make a determination as to whether Santiago's

9   conduct was in fact improper or unlawful.  The pending claim is

10  therefore inadmissible.

11        Except for the substantiated claims that Santiago made

12  a false arrest and false statement in this case, all but one of

13  the other CCRB complaints against Santiago are unsubstantiated.

14  They, too, are inadmissible.

15        The remaining complaint, which is for failure to

16  prepare a memo book entry, led to a disposition of "other

17  misconduct."  Neither party explains what this disposition

18  means.  Without a showing that this incident is probative of

19  character for untruthfulness, it is inadmissible.  Accordingly,

20  Santiago's motion to exclude evidence of the other allegations

21  of misconduct against him is granted.

22        Santiago's third motion in limine seeks to bifurcate

23  his cross-claims from the trial on plaintiff's claims.  This

24  motion is mooted by my ruling on the city's motion to dismiss.

25  Santiago's indemnification claim will be decided by the Court

t6erekus

1   as a matter of law after the conclusion of trial if the jury

2   finds him to be liable.

3          Santiago's fourth and final motion in limine seeks to

4   bifurcate the calculation of punitive damages from the

5   remainder of the trial.  This motion is mooted by my earlier

6   decision to bifurcate the punitive damages phase of trial, both

7   whether punitive damages are appropriate and their calculation.

8          During the punitive damages phase, co-defendants may

9   introduce evidence of their limited financial resources.

10  Plaintiff may also introduce evidence of the possibility of

11  indemnification, but it is cautioned not to speculate about the

12  likelihood of indemnification.

13         In the joint pretrial order, the parties each object

14  to the introduction of a number of exhibits that are not

15  addressed in their motions in limine.  I will now ask the

16  parties to address these objections, beginning with defendants'

17  objection to Plaintiff's Exhibit 10, the criminal court

18  complaint.  Counsel for Officer Santiago, would you state your

19  objection.

20         MR. LaBARBERA:  Your Honor, with respect to that

21  particular exhibit, we will withdraw that objection.

22         THE COURT:  Then let us go on to 11.  I have the same

23  question.

24         MR. GARBER:  May I address your Honor?  With regard to

25  the criminal court file itself, the file in its totality

1   potentially contains information that is not relevant.  The

2   actual tickler from the criminal court file that indicates the

3   specific dates would be relevant because of the malicious

4   prosecution claim in terms of how many times the plaintiff had

5   to go back to court, certainly would be something which would

6   be admissible.

7           I wouldn't object on behalf of Officer Santiago to

8   that.  But just putting in other unspecified material from that

9   criminal court file --

10          THE COURT:  You need to identify that material.  Don't

11  ask for some sort of a general exclusion.  Go through it and do

12  your work.  Having spent many hours filling out those ticklers,

13  I can tell you that it's very routine information.  I don't see

14  what could possibly be objectionable.

15          With respect to the CCRB file, 15, I have already

16  addressed that.  Also with respect to 16, the district

17  attorney's file, obviously legal conclusions about the claims

18  in this case are inadmissible, but the factual material is

19  admissible.  If you are looking to exclude something specific,

20  you have got to come back to me.  I do not want this at the eve

21  of trial.

22          MR. GARBER:  Yes, your Honor.

23          THE COURT:  So I want this by tomorrow.

24          MR. GARBER:  Understood.

25          THE COURT:  I do not want to waste time in the middle

1   of trial for you filtering through exhibits because you haven't

2   done it beforehand.

3        Number 18, the Ferrara central personnel index, I

4   think I already addressed that.  I will state again that prior

5   bad acts on propensity are potentially obviously inadmissible,

6   unsubstantiated claims inadmissible.  But with respect to

7   impeachment material for untruthfulness purposes, they would be

8   admissible.

9        I don't want to be in a situation where the file is

10   pulled out during the trial and there is some general objection

11   and you scurry to the front and you can't even find what you

12   are objecting to.  Don't do that.  I will not tolerate that.

13        With respect to 19, the Ferrara performance monitoring

14   unit, it's essentially the same.

15        With respect to number 20, Ferrara's CCRB history, the

16   same.

17        With respect to 21, the complaint report, it's not

18   admissible.  It's basically propensity evidence.

19        With respect to 22, the IAB charges and specs

20   regarding Bah, to the extent that the false statement can be

21   impeachment material, it will be handled in the way that I have

22   already explained.  And no extrinsic evidence, again, will be

23   able to be elicited.

24        Number 23, the same.

25        24, the same.

1          25, again, I will not permit propensity evidence or

2     unsubstantiated claims.  But to the extent that there is

3     material that goes to truthfulness, I will permit it.

4          The same for number 26, Santiago's CCRB history.

5          What I suggest is that you sit down together and go

6     through these exhibits line by line so that there are no

7     surprises or lengthy pauses during trial.

8          Now we are going to go to Santiago's exhibits.  A, the

9     arrest report.  I don't understand plaintiff's objection.

10         MR. KNUDSEN:  Technically, it is going to be coming

11    into evidence, so we can withdraw that.

12         THE COURT:  What about the arrest report supplement.

13    I assume the same applies.

14         MR. KNUDSEN:  Right.  Anything written by the

15    defendants we would seek to introduce.  Typically, they would

16    have to put in a business record exception to do that.  We

17    expect that is going to happen.  If they want to do it on their

18    case in chief for us, it would be for impeachment purposes and

19    an admission; I could get it in that way.

20         My practice is typically anything that is a hearsay

21    admission, that doesn't mean we are going to object on that

22    basis at trial.  It is more prospective.  That I don't want to

23    lose my ability to object at trial that it is not being put in

24    for a proper purpose.

25         THE COURT:  Examine the document.  Again, I do not

1    want to be standing at the bench going through line by line

2    because you haven't done that beforehand.

3              MR. KNUDSEN:  Exactly, your Honor.

4              THE COURT:  Be prepared.

5              MR. KNUDSEN:  We will.  Thank you.

6              THE COURT:  With respect to the Hernandez memo book

7    entry, C, what is the objection?

8              MR. KNUDSEN:  It would be similar.  All these hearsay

9    objections up until F would be the same thing.  These are all

10   documents written by one of the defendants or co-defendants.

11   And Hernandez is not in the case anymore as a defendant.

12             F, I'm not sure who wrote that.  I would say it is a

13   hearsay objection continuing because it does seek to

14   characterize what the plaintiff has said.  I'm not sure who

15   created what is in here.  There may me hearsay within hearsay

16   exceptions for that.  If they want to seek to introduce that

17   and explain that process, then that would have to happen.

18             THE COURT:  You need to work it out amongst

19   yourselves.

20             MR. KNUDSEN:  Okay.  And the criminal court complaint,

21   that will come in since it is the disposition of objections.

22             On the 50(h) hearing, there has been no designation,

23   but they are statements of the plaintiff that will come in.  My

24   objection if it is misleading or confusing or bolstering.  I

25   wouldn't object as to an admission, but maybe it would be

1   relevance, something along those lines.  Without knowing

2   exactly, since there was no designation, it is hard to specify

3   what an objection would be without designating specific

4   portions.

5           In general, it would be admissible as an admission

6   unless there is another objection.  That is why we reserved

7   those other objections.  Similar to the notice of claim, it

8   would be misleading or confusion based upon the use.  We don't

9   know the use.  We put that in as a prospective objection to the

10  extent it's being mischaracterized or something like that.

11          For the memo book entry, presumably, if they seek to

12  put it in themselves, it would have to be through a hearsay

13  exception.

14          The surveillance video there is no objection to.

15          The Bronx DAO statement notice, when I looked at

16  Hernandez 64, it didn't seem to be whatever a Bronx DA or

17  statement notice is.  I don't know what that document is.

18          THE COURT:  Are you saying you don't know what a

19  statement notice is?

20          MR. KNUDSEN:  I don't know what a statement notice is,

21  but 64 doesn't look like a statement notice.

22          MR. LaBARBERA:  Your Honor, the city made two

23  productions that had similar numbers.  In other words, the

24  second production didn't start with numbers consecutive to the

25  first production.  So the defendants' Bates stamps, there are

1    essentially two documents that say defendant Hernandez number

2    64.  One is from one date, one is from a subsequent date.  That

3    particular exhibit came from the second production.  If you are

4    looking at the first production --

5         MR. KNUDSEN:  The document we have is a negative

6    Sprint report for 64.  I'll have to check the other document.

7         THE COURT:  The statement notice would merely be what

8    the prosecution claims that the criminal defendant, your

9    client, said.

10        MR. KNUDSEN:  Yes.  That's what I thought.  But that's

11   not what this was.  I did think I found the document they

12   intended to put as the Bates stamp there.  Again, that could be

13   hearsay because it is double hearsay.  It not necessarily can

14   be used as an admission for him unless people come in and

15   verify it or plaintiff admitted.  But he is going to dispute

16   what is in that document.

17        THE COURT:  You're saying he is going to dispute

18   alleged statements?

19        MR. KNUDSEN:  Yes.  I'm not sure if I'm going to

20   object to that at trial yet.  That's why I put the objection

21   in, to preserve it.  I put the objection in to this document

22   because it wasn't a DAO statement notice, the ones that they

23   had Bates stamped.  Having found that document and looked at

24   it, I'm not sure we would object at trial if they seek to move

25   it in.

1          THE COURT:  Going to Ferrara's exhibits, the arrest

2    report.

3          MR. KNUDSEN:  They are all duplicative.  They are the

4    same exhibits essentially.

5          THE COURT:  The trial will begin this Monday.  During

6    jury selection and deliberations, court will be in session from

7    9:00 a.m. to 5:00 p.m. with a break from 1:00 to 2:00 p.m.

8    During the evidentiary portion of the trial, court will be in

9    session from 9:00 a.m. to 2:15 p.m. with a break from 11:15 to

10   11:45.  I will have snacks for the jurors before 9 o'clock and

11   during the break.

12          I have been informed by the jury department that on

13   Monday jurors will not be available until 10:30.  So you don't

14   have to get here at 9:00.  You can show up at 10:30.

15          Are there other issues that the parties would like to

16   address?

17          MR. KNUDSEN:  I want to object to the special

18   interrogatories that they forwarded yesterday.

19          THE COURT:  I am not ready to talk about the special

20   interrogatories.  We'll do that anon.  Anything else?

21          MR. GARBER:  Thank you, your Honor.  We don't have any

22   further application.

23          THE COURT:  See you on Monday at 10:30.

24          (Adjourned)

25